IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM GARNER, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:03cv762-MEF |
| | ) | (WO) |
| JEFFREY WILLIAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

At the time of the incident about which the plaintiff complains in this 42 U.S.C. §

1983 action, he was incarcerated at the Montgomery Work Release facility operated by the

Alabama Department of Corrections.[1]  The plaintiff complains that when he was disciplined

for being fired from his job at Church's Fried Chicken, the defendants violated the Equal

Protection Clause and the Due Process Clause of the Fourteenth Amendment.[2]  He also

alleges that the defendants were deliberately indifferent in violation of his Eighth

Amendment rights by assigning him to work at Church's Fried Chicken in the first place.[3]

The plaintiff names as defendants Jeffrey Williams, the Warden and Director of the

---

[1]  The plaintiff has since been released from custody.

[2]  Although the plaintiff alleges a violation of the Fifth Amendment, it is clear that his claim is a Fourteenth Amendment Due Process claim.  *See* Pl's Resp. to Defs' Special Report at 4.

[3]  The plaintiff also alleges that his first amendment rights were violated when he "was transferred to a lower custody from level (1) which I was able to work to help support my family and pay on my restitutions and get a job in my field so that upon release I will have those experiences in finding a job." (Pl's Resp. to Defs' Special Report at 4).  This claim, as described by the plaintiff , does not state a violation of the First Amendment.

Montgomery Work Release facility, Sergeant Michelle Ellington, the disciplinary hearing officer, Mary King, the job placement officer, and Donald Adair, a supervisor at the Work Release facility.   The plaintiff seeks compensatory and punitive damages as well as injunctive relief.

This case is now before the court on the plaintiff's complaint, the defendants' special report and the plaintiff's response.   Pursuant to the orders of this court, the defendants filed a special report and supporting evidentiary material addressing the plaintiff's claim for relief. Previously, the court informed the plaintiff that the defendants' special reports may, at any time, be treated as a motion for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment.   Garner has filed his response, and this case is now before the court for consideration of the defendants' motion for summary judgment.   Upon consideration of the motion and the supporting and opposing briefs and evidentiary material, the court concludes that the motion for summary judgment should be granted.

## STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence to support his constitutional claim.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"   *Id.* at 324.   A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for

summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex,* 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The record in this case demonstrates that the plaintiff has failed to establish that there is any genuine issue as to a material fact in order to avoid judgment in favor of the defendants.

**DISCUSSION**

**A.  The Disciplinary Due Process Claim**

The plaintiff alleges that he was denied procedural due process during the hearing on the disciplinary action taken against him for getting fired from Church's Fried Chicken. Garner asserts that because defendant Ellington did not determine whether he was capable of representing himself at the hearing, the entire proceeding should be nullified and defendant Williams should not have affirmed Ellington's decision.[4]  As a result of the disciplinary, Garner was recommended for a classification review, and his passes, leaves, visitation, phone and shopping privileges were removed for 45 days.  He was also assigned extra duty for 45 days.  The plaintiff does not dispute that he was given a disciplinary hearing.  Rather, he challenges the results of that hearing.

The plaintiff's description of the actions of the defendants do not show that he was exposed to any treatment which imposed on him an "atypical and significant hardship in the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In *Sandin*, the Court specifically rejected the contention that punitive measures encroach upon a liberty interest protected under the Due Process Clause.  "Discipline by prison officials in response to a wide range of misconduct falls within the expected

---

[4]  Interestingly, the plaintiff does not allege that he was incapable of representing himself at the disciplinary hearing.  Rather, he objects that he was not allowed to ask all the questions he sought to ask. In addition, he admits that he has a B.S. degree in Business Administration and complains that he should not have been sent to Church's to work.  He asserts he should have been allowed to wait for a job that would allow him to use his computer skills.

parameters of the sentence imposed by a court of law." *Sandin, supra,* at 485.  The plaintiff

has failed to demonstrate that his disciplinary action implicates any interest protected by the

Constitution because he has not demonstrated that he was subjected to any "atypical or

significant hardships" as a result of the disciplinary proceeding.  Consequently, the court

concludes that he has failed to establish a constitutional violation implicating the Due

Process Clause of the Fourteenth Amendment.  Summary judgment in favor of the defendants

on the plaintiff's disciplinary claim will be granted.

## B.  The Equal Protection Claim

To establish his claim under the Equal Protection Clause, Garner must show (1) that

he is similarly situated with other persons who were treated differently than him, and (2) that

the reason for the differential treatment was based on race or some other constitutionally

protected interest.  *Damiano v. Fla. Parole & Probation Comm'n*, 785 F.2d 929 (11th Cir.

1986).  Moreover, it is clear that the plaintiff must come forward with evidence showing the

existence of a genuine issue of fact about discriminatory intent, purpose or motive.  *Arlington

Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 256 (1977); *E & T Realty v.

Strickland*, 830 F.2d 1107 (11th Cir. 1987).

It is undisputed that as a result of the disciplinary for being fired from his job, the

plaintiff was transferred from the Montgomery Work Release to the J.O. Davis Honor Camp

in Atmore, Alabama.[5]  In support of his Equal Protection claim, the plaintiff asserts that

_____

[5]  The Honor Camp is a level II secure facility while the Montgomery Work Release facility is a
lower level 1 facility.

although other inmates were fired from their jobs, they were not transferred from the Montgomery Work Release facility.  As a matter of law, this is insufficient to show that Garner was similarly situated to any other inmate.  Garner presents no evidence that the reason for the differential treatment between inmates was based on race or some other constitutionally protected interest.  *Damiano, supra.*  Consequently, Garner's Equal Protection claim fails.

## C.  The Eighth Amendment Claim

The plaintiff alleges that prison officials were deliberately indifferent to his medical needs by assigning him to work at Church's Fried Chicken.  To prevail in a suit based on an eighth amendment claim about medical needs, a prisoner must show at a minimum that prison or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985).  Deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson  v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992).  A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  A prison or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, *supra*.

6

The plaintiff repeatedly asserts that he was sent to a job without regard to his "disability."[6]  He further alleges that the

> working conditions [at Church's] were not safe for a person that could slip and fall, lift too much weight.  Because grease was around the cooking area and I could have slipped and got seriously burned.  Water on the floor area could have caused me to slip and hurt my back or neck as well as any part of my body.

(Pl's Resp. to Defs' Special Report at 5).

The plaintiff's fears about the possibility of being injured on the job are not the equivalent of a showing that the work entailed a risk of substantial harm unabated by the defendants.  Indeed, the plaintiff has failed to come forward with any evidence that shows that any defendant was aware of a risk of substantial risk of harm to the plaintiff by requiring him to work at Church's *and* failed to act to abate that risk.  Consequently, Garner's Eighth Amendment deliberate indifference claim also fails.

### D.  The Retaliation Claim

Finally, Garner claims that he was sent to work at Church's so that he could get fired, disciplined and transferred to another institution, all in retaliation for calling his wife and telling her that another inmate had been injured at the Work Release facility.  According to the plaintiff, inmate Johnny People was severely injured at the facility but the correctional officers did not notify People's mother.  Consequently, Garner called his wife, who in turn

---

[6]  It is undisputed that the plaintiff was injured in an automobile accident in 2001 while traveling in a DOC vehicle.  However, the plaintiff concedes that he was released to return to work on light duty, not to lift more than 15 pounds, on May 23, 2002.

7

informed People's mother that People had been injured.  Garner now asserts that his job placement, disciplinary and transfer were all in retaliation for his part in notifying People's mother about People's injury.

The method of establishing a retaliation claim is essentially the same as for a claim of race or sex discrimination.  *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986).  An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that the prison official retaliated against the inmate.  *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981).  To establish a prima facie case, an inmate must show that he was engaged in protected activity, such as the filing of a lawsuit; that he suffered adverse treatment simultaneously with or subsequent to such activity; and that there was a causal link between the protected activity and the adverse treatment.  *Donnellon*, 794 F.2d at 600-01.

If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate.  This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence.  The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced.  *Burdine, supra*.  Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court

8

that the proffered reason for the adverse decision is a pretext for retaliation.  An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse decision is not worthy of belief.  By so persuading the court, the inmate satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful retaliation.  *Burdine, supra*.

For analytical purposes, the court will presume that the plaintiff meets his prima facie burden. The defendants have articulated a non-retaliatory reason for the disciplinary action: getting fired from his job at Church's.  Thus, the burden is upon Garner to come forward with evidence from which a trier of fact could reasonably conclude that a retaliatory reason is the more likely motivation or that the proffered reasons are not worthy of belief.  Garner cannot demonstrate that the defendants' reason for his disciplinary action was pretextual. It is undisputed that Garner was disciplined for being fired from his job at Church's.  Garner also concedes that he was fired for a "lack of interest in his job" and he was not "enthused" about his job.  Consequently, because Garner admits that the reason which the defendants articulated for disciplining him, he cannot establish that the reason was pretext for retaliation.

To the extent that Garner argues that his initial placement at Church's was retaliatory, this claim has no merit.  First,  the plaintiff has offered nothing more that his own conclusory contentions to support this allegation.  Next, there is no evidence which indicates that the plaintiff was *punished* for anything by his assignment to Church's.  As indicated above, with

9

respect to the disciplinary action against him, the only punishment was revocation of some of his privileges and reclassification.  Third, a hearing was held concerning the charges against the plaintiff at which he had the opportunity to and did defend himself against the charges.  The defendants are entitled to summary judgment on this claim because there is no evidence from which a reasonable jury could conclude that either Garner's assignment to Church's or his subsequent disciplinary action was retaliatory.  Consequently, the court concludes that Garner has failed to establish a prima facie case of retaliation and this claim fails.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motion for summary judgment be granted and that this case be dismissed with prejudice with costs taxed to the plaintiff.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 15, 2006**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5ᵗʰ Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11ᵗʰ Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11ᵗʰ Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2ⁿᵈ day of May, 2006.

_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

11